**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**HOT SPRINGS DIVISION**

**CHRISTOPHER PHILLIPS, Individually and on**                     **PLAINTIFF**
**Behalf of All Others Similarly Situated**

**v.**                          **Case No. 6:23-cv-6055-SOH**

**OAKLAWN JOCKEY CLUB, INC.**                              **DEFENDANT**

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR**
**CONDITIONAL CERTIFICATION, FOR APPROVAL AND DISTRIBUTION OF**
**NOTICE AND FOR DISCLOSURE OF CONTACT INFORMATION**

**I.      Introduction**

The Defendant Oaklawn Jockey Club, Inc. (Oaklawn) acknowledges and respects the

Court's decision in *Wilson v. Oaklawn Jockey Club, Inc.*, Case 6:22-cv-06041 SOH (W.D. Ark.)

(Doc. 23) regarding adherence to the two-tiered approach to collective actions.   Oaklawn

nonetheless would like to preserve its arguments regarding the collective action standard in this

matter and respectfully ask the Court to reconsider its prior decisions in light of the circumstances

of the present matter.   Also, the *Wilson* briefing and opinion did not address the Fifth Circuit's

decision in *Swales v. KLLM Transportation Services, LLC*, 985 F.3d 430 (5th Cir. 2021) rejecting

the two-tiered approach and expressly rejecting the suggestion the Fifth Circuit had previously

endorsed the two-tiered approach in cases such as *Mooney v. Aramco Services Co.*, 54 F.3d 1207

(5th Cir. 1995).   While Oaklawn understands the Court's prior rulings, Oaklawn respectfully

requests the Court to entertain this argument again in light of the persuasive opinion in *Swales* and

the circumstances of this case, which are different than *Wilson*.

The need for reconsideration of the two-tiered approach is not merely academic.   The

empirical outcomes from the rise in FLSA litigation in the federal courts of Arkansas show that the

lenient standard of certification has led to stirring up of litigation and artificial fee generation using

tactics that have come under heavy criticism from most all federal judges in the state as well as judges at the Eighth Circuit.

The pattern is largely the same and most often, as is the case here, involves an early motion to conditionally certify a collective action. Once granted under the current lenient standard, other employees and former employees are solicited to join a lawsuit with unknown merit and little review of their similarly situated status. Often the opt-ins are not even ultimately eligible to participate. The number of opt-ins can artificially inflate the value of a weak case as there is strength in numbers. The notice procedure operates as direct-mail advertising for the plaintiff's law firm. This is a foreign concept in any other area of civil law. The original concept, to cut down on litigation via duplicitous lawsuits, has been lost. The defendant must now defend the case as a class action and conduct discovery regarding the opt-in plaintiffs. This artificially increases the cost of defense of a case, and it changes the economics and calculus of whether the defendant should settle the matter, again regardless of the merit of the case. In abandoning the two-tiered approach, the Fifth Circuit has recognized these danges. *See Swales*, *supra.*

This process also artificially inflates the settlement value of the case, regardless of the merit, as these additional opt-in plaintiffs have to be included in the settlement and consideration exchanged to dispose of their claims. The only alternative to a settlement is for a defendant to pay the expense necessary to defend the claims of all class members, conduct class wide discovery simultaneously as to the merits of the claims and as to whether the class members are similarly situated, and prepare a motion to decertify the class.

If the motion to decertify is successful, the best-case scenario for the defendant is they have incurred this expense and time lost merely to get back to square one – a single plaintiff with a single, claim. But in most instances, the defendant ends up in a worse position having won the decertification motion. The reason for this is the damage is already done via the solicitation notices.

FEC/10104.0806/10138410.1-7/14/23

The defendant must now defend against the individual claims of former opt-in plaintiffs who were only solicited to join the case in the first place under the auspices they were similarly situated and that the case was conditionally certified as a collective action. *See e.g., McCoy v. Elkhart Products, Inc.* No. 5:20-cv-5176-PKH (W.D. Ark.)(motion to decertify granted when alleged facts supporting conditional motion proven to be untrue)*; Mix v. Elkhart Products, Inc*., 5:21-cv-5102-TLB (W.D. Ark.)(solicited "class member" failed to timely elect to join *McCoy,* but was filed separate claim after solicitation); *Alverson v. Elkhart Products, Inc.*, No. 5:21-cv-5191-PKH (W.D. Ark.)(former *McCoy* opt-in's subsequent suit after decertification).

The conditional certification and additional opt-in plaintiffs also artificially multiply how the plaintiff's firm values their attorneys' fee. This is how the two-tiered approach to collective action motions has stirred up litigation over the last decade as well as facilitated the framework for issues surrounding counsel's fee petitions.

Under Phillips' interpretation of the notice stage of the two-tiered approach as it has evolved, the Court's role is to normally approve the collective action without any scrutiny of the proof proffered, order the defendant to produce the solicitation list of other current and former employees, and approve the solicitation notice. In this analysis, once a plaintiff avers they have been the victim of an FLSA violation and others have as well, that should end the discussion of whether a collective action should be conditionally certified. Given the harm that befalls or can befall a defendant when these notices are sent, equity requires more balance in this decision before court-sanctioned notices are sent.

This approach creates an environment ripe for abuse and stirring up of litigation using a unique procedure in the civil justice system. On its face, it is unusual for an attorney to send court-sanctioned solicitations to join litigation to individuals that plaintiff's counsel has identified through court ordered disclosure of names and addresses from the adverse party. This solicitation notice

3

does not include any associated costs or risk to the individual for participating.  The lenient standard has taken too much discretion away from the Court to manage the case and control solicitations to the public to join litigation of unknown merit.

Neither the FLSA nor any other controlling authority require this two-tiered approach.  The purpose of the collective action procedure is to consolidate claims of a similar nature to reduce multiplicity of suits.  That has not been the experience in Arkansas in the last decade.  To the contrary, the FLSA collective action procedure has multiplied and stirred up litigation.  For example, in *McCoy v. Elkhart*, when Defendant filed a meritorious motion to decertify, Plaintiff responded with a suggestion she simply be allowed to file an amended complaint with over 40 members of the collective as named Plaintiffs.  *See McCoy*, 5:20-cv-5176 [Doc. 56 and 56-1].  After the Court rejected that suggestion and decertified the collective, *Id.* [Doc. 61], Plaintiff ignored the previous order and simply filed the proposed amended complaint as a new action with the same 40+ Plaintiffs.

The Fifth Circuit, which is the source of the authority cited in *Wilson*, *supra*, for the two-tiered approach (*see Mooney, supra*) has rejected the two-tiered approach in a thorough, well-reasoned decision.  *Swales*, *supra.*  The balanced approach articulated in *Swales* avoids the stirring up of litigation and still results in certification of legitimate collective actions.  There is no precedent preventing the Arkansas federal courts, including this Court, from following suit.  The Circuit Court of Appeals cited as the basis for the two-tiered approach via *Mooney* has now even abandoned it.

Phillips has moved for conditional certification to solicit others who are purportedly "similarly situated." The crux of Phillips' claim is that Oaklawn misclassified him and others in the Slot Technician Supervisor position as exempt from overtime under the executive exemption of the FLSA and Arkansas Minimum Wage Act.  Under any standard, Phillips' motion should be denied in whole or in part.  Phillips has alleged key facts that are unique to himself and improperly expanded

FEC/10104.0806/10138410.1-7/14/23

the scope of the proposed class based on his limited tenure and the current status of the position. (Affidavit of Eric Gilson, attached hereto as **Exhibit A,** hereinafter "Gilson Aff.")

## II.    Factual Background

Phillips worked for Oaklawn most recently as a Slot Tech Supervisor from May 2021 until October 2022.  As such, he was classified as a salaried exempt supervisor.  (Gilson Aff.)  Oaklawn paid him a salary of $795.67 per week.  (Gilson Aff.)  As part of his duties, he was charged with supervising a particular shift (day shift most often in Phillips' case) and the two to four Slot Technicians on his shift at any given time.  (Gilson Aff.)  Slot Tech Supervisors had other duties associated with slot machines in the casino and training the subordinate Slot Technicians.  Phillips claims he had no authority to hire or fire employees and claims his input on such decisions was not given particular weight.  Oaklawn, however, has disciplinary documents drafted by Phillips, which relate to his input regarding discipline that ultimately led to discharge of a subordinate.  (Gilson Aff.)  Phillips documented several one-on-one conversations with his subordinate Slot Technicians regarding coaching for performance issues and attendance.

Oaklawn no longer has a position of Slot Tech Supervisor as of January 1, 2023.  (Gilson Aff.) Oaklawn restructured this department to eliminate that job title.  Phillips is mistaken that Kelly Mayo is currently a Slot Tech Supervisor (see Doc. 10-6, Paragraph 27).  She is a Slot Technician III, which is an hourly non-exempt position.[1]  During the majority of Phillips' most recent stint of employment as a Slot Tech Supervisor, there were only three other individuals who held the job title of Slot Tech Supervisor. (Gilson Aff.)

---

[1] These type of verifiable factual misrepresentations that a plaintiff can get away with in a lenient two-tiered approach highlight the inefficiencies and unfairness of that approach.  Very basic documents in discovery could establish facts such as these versus artificially taking a plaintiff's claims at face value to facilitate a lenient "notice stage."

### III.   Discussion

**A.   The Court should decline to conditionally certify a class.**

### *i.   Applicable Standard for Conditional Class Certification*

Oaklawn maintains this matter is not appropriate for certification using any approach, including the two-tier majority analysis.  *Bishop v. Petro-Chemical Transp., LLC.*, 582 F.Supp.2d 1290 (E.D. Cal. 2008).  It is time, nonetheless, for the federal courts in Arkansas to reexamine the efficiency and appropriateness of the two-tier analysis.

- *There is no binding authority requiring use of the two-tier analysis.*

The code section authorizing opt-in collective actions, 29 U.S.C. § 216(b), is silent as to how to define similarly situated individuals and as to a procedure for processing such claims.  There is also no binding United States Supreme Court or Eighth Circuit authority requiring district courts in Arkansas to use any particular method to determine at what stage notice is appropriate to putative class members.

In *Wilson*, this Court cited to *Murray v. Silver Dollar Cabaret, Inc.*, 2017 U.S. Dist. LEXIS 17462, No. 5:15-cv-5177-PKH (W.D. Ark. Feb. 8, 2017) for the proposition that the prevailing approach of courts within this circuit is the two-step process set forth in *Mooney*, *supra*.  In *Murray*, the Court stated, "Nonetheless, the Court finds it appropriate to emphasize that nothing in Eighth Circuit or United States Supreme Court precedent requires district courts to utilize this approach; rather, '[t]he decision to create an opt-in class under § 216(b), like the decision on class certification under Rule 23, remains soundly within the discretion of the district court.'" *Murray*, *4.  As noted herein, the Fifth Circuit never actually adopted the two-tiered approach in *Mooney*, and the Fifth Circuit has now expressly rejected the two-tiered approach in *Swales*.

When backtracking through the district court opinions in Arkansas for the source of the reliance on the two-tiered method, most courts rely on the fact that it has been the prevailing method

FEC/10104.0806/10138410.1-7/14/23

within the circuit with a citation to an earlier district court case and no further analysis or discussion. For example, Judge Holmes in *Murray* cited back to *Resendiz-Ramirez v. P & H Forestry, L.L.C.*, 515 F. Supp. 2d 937, 940 (W.D. Ark. 2007) for the proposition that most district courts in the Eighth Circuit use the two-tiered approach. The *Murray* opinion has no further discussion or analysis of why the Court adopted that approach in that particular matter. *Murray*, \*4. In *Resendiz-Ramirez*, the Court relied on the fact that the majority of other district courts in the Eighth Circuit use the two-tiered approach without further analysis or discussion.

While precedent is obviously a key touchstone of American jurisprudence, changing circumstances and experience should advise future decisions, especially on discretionary matters of procedure. Moreover, the Fifth Circuit thoroughly considered and rejected the idea there was any precedent for the two-tiered approach. *Swales*, 985 F.3d at 440 (noting the two-stage process might be common practice, "[b]ut practice is not necessarily precedent.") The circumstances of FLSA collective actions in sixteen years ago in 2007 when *Resendiz-Ramirez* was decided have changed. The model that was sufficient at that time has proven to no longer be efficient or in the best interests of judicial economy as explained herein. Since 2007, Arkansas federal courts have seen an exponential rise in FLSA/collective action litigation. With this surge of collective actions has come unnecessary expenses as well as stirring up of litigation and attorneys' fees. What has also come are lessons from a lot of experience that should guide future decisions instead of the "inertia," as the Fifth Circuit stated, of using the two-tiered approach for the sole reason it has been the predominant approach in the past.

The Fifth Circuit makes several important points in rejected the two-tiered approach in favor of an approach that gives the district court more discretion to determine if a collective action is in fact appropriate *before* solicitation notices are sent and if so, who should get notice. The Court noted district courts should not be captive by the "inertia" of other courts that have followed *Lusardi*

7

*v. Xerox Corp.,* 99 F.R.D. 89 (D.N.J. 1983). The Fifth Circuit held that the district court "must rigorously scrutinize the realm of 'similarly situated' workers, and must do so from the outset of the case, not after a lenient, step-one 'conditional certification.'" *Swales*, 985 F.3d at 434. The justification for this standard was that so notice would only go to those individuals who are actually similarly situated. *Id.* Otherwise, sending notice to those individuals who cannot ultimately participate "merely stirs up litigation, which is what *Hoffman-La Roche* flatly proscribes." *Swales*, 985 F.3d at 441.

Notably, the Fifth Circuit identified two dangers of collective actions in reasoning why it was so important to get the notice provision correct. First, "the opportunity for abuse (by intensifying settlement pressure no matter how meritorious the action)," and "the appearance of court-endorsed solicitation of claims (by letting benign notice-giving for case-management purposes warp into endorsing the action's merits, or seeming to, thus stirring up unwarranted litigation)." *Swales*, 985 F.3d at 435. These dangers have manifested into real prejudicial results in the federal courts of Arkansas. The primary reason being the ease of getting a collective action conditionally certified under the two-tier approach. The plaintiff, with minimal proof of similarly situated status and no proof of the merit of any claim, can obtain permission to solicit more plaintiffs. Defendant, in agreement with the Fifth Circuit, suggests this approach is backwards, and the Court should be more certain there is a common claim warranting an unsolicited notice, sanctioned by the Court under the style of a case, to join a lawsuit.

The leading United States Supreme Court case on the general topic, *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989), concerned whether any court approved notices were appropriate, period. The case did not address the timing or standards utilized for determining when to send such notices, leaving that to the trial court's discretion. If anything, *Hoffman-La Roche* analogized the § 216(b) procedure with Fed. R. Civ. P. 23 for the purposes of deeming notices to putative class

members as necessary.  *Id.* at 171.  Finally, *Hoffman-La Roche* is clear that the trial court has discretion in administering the notice required, but that discretion should be used scrupulously to respect judicial neutrality.  *Id.* at 174.

There is nothing obvious in the legislative history of § 216(b) that would dictate use of the two-tier analysis.  *See* William C. Jhaveri-Weeks & Austin Webbert*, Class Actions Under Rule 23 and Collective Actions Under the Fair Labor Standards Act: Preventing the Conflation of Two Distinct Tools to Enforce the Wage Laws,* 23 Geo. J. on Pov. L. & Policy 233, 238-243 (2016).  The literature points out that in the early years of the FLSA, courts mainly relied on the "spurious" class action procedures of the former, pre-1966 version of Fed. R. Civ. P. 23 for FLSA opt in collective actions.  *Id.* at 238-241.

-   *History of two-tier analysis.*

Many authorities point to *Mooney v. Aramco*, 54 F.3d 1207 (5th Cir. 1995) as the source or primary authority for the two-tiered approach.  The Fifth Circuit in *Swales*, however, rejected the idea they had ever sanctioned the approach.  *Swales*, 985 F.3d at 439 ("This is mistaken.")

Here is how *Mooney* addressed the question at the time:

> The first line of cases is typified by *Lusardi v. Xerox Corp.*, and represents the method followed by the trial court in this matter. *Lusardi* and its progeny are remarkable in that they do not set out a definition of "similarly situated," but rather they define the requirement by virtue of the factors considered in the "similarly situated" analysis. In other words, this line of cases, by its nature, does not give a recognizable form to an ADEA representative class, but lends itself to ad hoc analysis on a case-by-case basis.
>
> Under *Lusardi*, the trial court approaches the "similarly situated" inquiry via a two-step analysis. The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision--usually based only on the pleadings and any affidavits which have been submitted--whether notice of the action should be given to potential class members.

FEC/10104.0806/10138410.1-7/14/23

Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.

The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives--i.e. the original plaintiffs--proceed to trial on their individual claims. *Based on our review of the case law, no representative class has ever survived the second stage of review.*

*Mooney,* 54 F.3d at 1213-1214 (emphasis added).

The opinion states that the trial judge used this approach, but it is silent as to the particulars of what information was presented at the first stage that the trial court found sufficient to send notice. The Court went on to specifically state this about the two-tiered approach:

We find it unnecessary to decide which, if either, of the competing methodologies should be employed in making an ADEA class certification decision. From the record, it is apparent that in this case, no matter how we analyze the similarly situated requirement, we cannot say that the district court abused its discretion in finding that the "opt-in" plaintiffs were not similarly situated. In so holding we specifically do not endorse the methodology employed by the district court, and do not sanction any particular methodology. We simply need not decide the appropriate methodology under these facts, and therefore leave that inquiry for another day.

*Mooney*, 54 F.3d at 1216.

Despite being the bedrock opinion for use of the two-tiered approach, even the *Mooney* opinion itself goes out of its way to not endorse the methodology. *Mooney* is also no longer good law to the extent it was authority for the two-tiered approach in the Fifth Circuit. The Court that

10

authored *Mooney* has recently recanted both the two-tiered approach itself and the suggestion the Court had *ever* sanctioned the approach in the first place.  *See Swales*, *supra*.

The opinions in *Mooney*, *Swales* and other cases, *see Madden v. Lumber One Home Center of Stuttgart, Inc.*, 2010 U.S. Dist. LEXIS 127558 (E.D. Ark. 2010), point to *Lusardi v. Xerox Corp.*, 99 F.R.D. 89 (D.N.J. 1983) as an early adopter of the two-tiered approach.  That opinion focuses on the inappropriateness of maintaining a Rule 23 class action alongside a § 216(b) opt in collective action and the appropriateness of any notice at all as the case was pre-*Hoffman-La Roche*.  Notably, the *Lusardi* court dropped this footnote when confirming that notice would go out to putative class members:

> At oral argument on July 11, 1983, the Court set up a 45 day discovery period for the purpose of establishing the number of persons similarly situated to named plaintiffs. Once this discovery is complete, plaintiffs may move to certify a specifically described class to whom notice will ultimately be sent.

*Lusardi v. Xerox Corp.*, 99 F.R.D. 89, 93, n.8 (D.N.J. 1983).

Therefore, in one of the leading early adopter opinions of the two-tiered approach, the court at least called for some discovery to determine the appropriateness and scope of the class.   It apparently did not simply rely on allegations in the complaint or conclusory declarations of the plaintiff to decide the matter.  The approach actually used in *Lusardi*, which included discovery, is not how courts apply the two-tiered approach today.  Under the Federal Rules, parties cannot start discovery if a motion for conditional certification comes before the Rule 26 conference.

-   *Analysis of two-tiered approach versus other approaches*

The *Swales* opinion has a good, well-cited, discussion of the history of the different approaches to when notice should issue in purported collective actions.  *Swales*, 985 F.3d at 436-7. In addition to the two-tiered approach, there is the Rule 23 approach in *Shushan v. University of Colorado*, 132 F.R.D. 263 (D. Colo. 1990).  The Court in *Shushan* concluded:

FEC/10104.0806/10138410.1-7/14/23

I cannot accept the extraordinary assertion that an aggrieved party can file a complaint, claiming to represent a class whose preliminary scope is defined by him, and by that act alone obtain a court order which conditionally determines the parameters of the potential class and requires discovery concerning the members of that class. Before I conditionally determine the scope of the class, plaintiffs will need to satisfy me that there exists a definable, manageable class and that they are proper representatives of the class. They will, in other words, need to show that they satisfy the requirements of Rule 23 or convince me that a particular requirement is inconsistent with 29 U.S.C.A. § 216(b). When that showing is made, I will consider the question of notice under the guidelines set forth in Rules 23(c) and 23(d) and in *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989).

*Id.* at 268.

The *Shushan* opinion was over thirty years ago and was outside the context of what has happened in Arkansas federal courts over the last ten years with respect to FLSA litigation. The Court in *Shushan* was alluding to the opportunity for abuse that is associated with a lax standard for a party to establish a putative collective action, and associated mass solicitation notices.

The *Swales* opinion does not adopt either approach but instead adopted new approach to ascertain whether solicitation notices are appropriate.

Instead of adherence to *Lusardi*, or any test for "conditional certification," a district court should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of "employees" is "similarly situated." And then it should authorize preliminary discovery accordingly. The amount of discovery necessary to make that determination will vary case by case, but the initial determination must be made, and as early as possible. In other words, the district court, not the standards from Lusardi, should dictate the amount of discovery needed to determine if and when to send notice to potential opt-in plaintiffs.

*Swales*, 985 F.3d at 441.

FEC/10104.0806/10138410.1-7/14/23

- *This Court should follow the lead of the Fifth Circuit in a more reasoned, deliberate approach before sending out solicitation notices.*

The Fifth Circuit's opinion does a masterful job outlining the issues associated with the two-tiered approach to certification of collective actions in FLSA cases.  The dangers expressed in that opinion about the lenience of the two-tiered approach have played themselves out over and over in this jurisdiction.  Often the Court is shielded from the prejudice and inefficiency associated with a conditionally certified collection action with no merit to the underlying claim.  The Court is not privy to the particulars or details of the settlement negotiations for these claims and how a conditionally certified collective action, even in a little to no merit case, can exert "formidable settlement pressure," as the Court stated in *Swales*.  985 F.3d at 436.

This concept that the merits of the similarly situated status of the plaintiff and putative opt-in class members should not be or is not considered at the notice stage is both illogical and a logical fallacy.  The Fifth Circuit recognizes that there is no real justification for a district court to have to artificially ignore certain types of evidence at an artificially created "stage" of a case.  This is especially true when there is no precedent for such an approach in the text of the governing statute or from a holding of a higher court.  The idea the "merits" are not considered is also a logical fallacy, because the Court must consider the merits of the request to some degree to conditionally certify the class.  The Court is not a rubber stamp.  In the same opinions where courts recite this standard, they go on to make merits determinations that a conditional certification is appropriate.

Phillips' position is that the lenient standard at the notice phase is, in effect, a prohibition on any review or consideration of Oaklawn's proof that refutes his.  This concept rubs against the notion of due process, fairness and judicial impartiality, and the Court is not required to accept this concept to properly and efficiently manage an FLSA collective action.  The Fifth Circuit has rejected it.

FEC/10104.0806/10138410.1-7/14/23

This prejudice is particularly harmful in light of the consequence.  The impact of a conditional certification is that the defendant must spend attorneys' fees, time and resources to conduct class-wide discovery and prepare a motion to unwind the collective action.  Even when the collective is properly dismissed, the defendant often faces numerous additional claims that would not exist but for the notice that, in hindsight, should have never been sent.

Most any argument against the use of a different standard in lieu of the *Mooney* two-tiered analysis is misplaced.  The current procedure has evolved because it is convenient, at least on the front end, for the courts and employees' counsel.  In light of the discovery mentioned in *Lusardi*, the standard has been watered-down and whittled away by a misapplication that no consideration of any of defendant's proof is permitted if it contradicts plaintiff's bare allegations.

It is an easier standard to apply that can evade appellate review because it is not an appealable final order.  The court always has the opportunity to de-certify the class near or at the end of discovery.  This is of little solace to a defendant and is prejudicial to their interests in the case.  After a conditional certification is granted, a defendant has to conduct discovery often for a much larger group of parties that is appropriate or necessary.  If the defendant objects to the collective action after that expensive process, it must file a well-supported motion (contrasted with the minimal showing the plaintiff has to make at the notice stage) to undo the conditional certification.  A defendant who has successfully de-certified a conditionally certified collective action has no recourse against the plaintiff for the misclassified action.  The defendant is left to pay to unwind something that perhaps should have never been wound.  This is an unjust and unnecessary result.

Another argument in favor of a liberal and freely granted conditional certification early on in the case is the effect of the statute of limitations.  The statute for opt-in plaintiffs does not stop or toll until they opt in.  Therefore the argument goes it is imperative they get notice of the case as soon as possible, as compared to Fed. R. Civ. P. 23 class members who get the benefit of the original

FEC/10104.0806/10138410.1-7/14/23

filing date of the complaint.  This ignores the basic premise that the statute of limitations on all claims always continues to run until a case is filed.  In other areas of the law, the courts do not view this as a basis for alerting any potentially similarly situated individual that has a similar claim against a defendant they need to file or join a lawsuit.  The filing of a collective action without prompt notice to potential opt-in members does not prejudice the potential opt-in or lull them into inaction to prohibit them from protecting their rights.  Most often, potential opt-in plaintiffs are never even aware of the case until they get the notice.  A potential opt-in can file their own lawsuit or claim with the Department of Labor, and they can do so whether a collective action was ever filed or not. Finally, there is always the possibility of equitable tolling when a court sees fit.  In short – there is no valid reason to rush to a hasty decision on certification.

Looking back to the original purposes of collective actions articulated in *Bayles* and *Hoffman-La Roche*, the current model has strayed from effectuating those purposes. Initially, the *Bayles* decision points out that the holding of *Lusardi* counsels that the court should consider the purposes and putative benefits of a collective action in deciding whether to grant certification. *Lusardi* is one of the primary sources of authority cited for the two-tiered approach.  Yet the current two-tiered method, as applied, has abandoned individualized consideration of whether conditional certification is consistent with the purpose of § 216(b) and consideration of any potential benefits of a collective action in any particular matter.

The first purpose articulated in *Hoffman-La Roche* was allowing plaintiffs to pool resources. The reality of the situation is that plaintiffs are not bearing their own costs in these matters to begin with, regardless if there is a collective action certified or not.  Based on submission by attorneys with fee petitions in these matters, their counsel generally are employed under a contingency fee or structured arrangement where the attorneys will pay or at least advance the costs of litigation to the plaintiff.  A review of the dockets in the Eastern and Western District reveal a good number of

individual plaintiff, non-collective action, FLSA and AMWA cases as well filed by a few different firms.  In other words, individual employees in Arkansas with FLSA claims have no shortage of available ready to take their case.  Rarely, if ever, are out of pocket fees charged by counsel to the plaintiffs in these cases.

The second purpose was to consolidate common issue of law and fact into one proceeding. The surge of these cases demonstrates the current two-tier procedure has had the opposite effect. As opposed to causing fewer of these cases consolidated to decide common issues, the majority approach has resulted in far more.  The reason for the increase of collective action FLSA cases is in part how easy it is to get a collective action conditionally certified and exponentially (and often artificially) raise the settlement value of a case regardless of merit, as explained herein and in *Swales*.

The current system results in notices going out, under the Court's style.  This serves as an invitation to individuals to participate in litigation without any initial evaluation from the Court as to whether a collective action is an appropriate procedure beyond review of a plaintiff's own self-serving affidavit.  Oftentimes discovery reveals the affidavit is inaccurate, but the damage is done. The Fifth Circuit's holding is that a district court violates the in *Hoffman-La Roche* if notice is sent to an individual who is ultimately deemed not eligible to participate in the collective action.  *Swales*, 985 F.3d at 441-442.

Some cases are more efficiently conducted as a collective action.  The courts can use initial, targeted discovery to make a more reasoned and accurate determination on what cases are appropriate for collective action status.  Importantly, this can be done *before* solicitation notices are sent out to individuals who may or may not be eligible to participate.  The current two-tiered model does not give the trial court any chance to weigh the merits or efficiencies of allowing a matter to proceed as a collective action.  Even the early cases adopting the two-tiered method provided the opportunity for some discovery to guide the Court at the notice stage.  *See Lusardi*, *supra.*

16

This Court should review the assertion the trial judge in *Shushan* could not accept and determine if it is appropriate that federal courts in Arkansas continue to accept it today. The Fifth Circuit has refused to accept it. The two-tier approach should be reevaluated in light of the current litigation climate and how the current method has been utilized. In its place, the Court should follow the lead of the Fifth Circuit and adopt the *Swales* procedure. This will allow the courts to be in a better position to be a gatekeeper for these matters.

If the Court were to adopt this approach, additional discovery and briefing would likely be required to determine if Phillips has satisfied his burden to proceed as a collective action with corresponding notices. At minimum, Defendant should be allowed to depose Phillips regarding his declarations prior to the Court ruling on the present motion.

### ii.       *Conditional certification should be denied even using the two-tiered approach.*

Even if the Court were to apply the traditional two-tiered approach, conditional certification is still inappropriate at the notice stage. Neither the FLSA nor the Eighth Circuit has defined "similarly situated". Nevertheless, this Court has considered several factors to determine whether employees are similarly situated, including:

> (1) whether the plaintiffs hold the same job title; (2) whether they worked in the same geographic location; (3) whether the alleged violations occurred during the same time period; (4) whether the plaintiffs were subjected to the same policies and practices; and (5) the extent to which the acts constituting the alleged violations are similar.

*Zezanski v. First Step, Inc.*, 2017 U.S. Dist. LEXIS 224814, at *6 (W.D. Ark. 2017); *McLendon v. Schlumberger Tech. Corp.*, No. 4:15CV00752 JLH, 2016 WL 3911897, at *2 (E.D. Ark. July 15, 2016).

An analysis of the factors demonstrates the present matter is not appropriate for conditional certification.

- *Same job title*

During the majority of Phillips' most recent tenure, there are only three other individuals who had the same job title.  A fourth worked with Phillips for approximately one month.  (Gilson Aff.)  Phillips estimates the number as five total in the time period back to May 2020, which was year before he started his most recent stint of employment.  (Doc. 10-6, Paragraph 4)  The job title no longer exists at Oaklawn as of January 1, 2023.  (Gilson Aff.)  Phillips is incorrect that Kelly Mayo is a Slot Tech Supervisor.  She is a Slot Technician III.  The limited scope of the class based on the job title demonstrate the matter is not appropriate for a collective action.

- *Same period of time*

Phillips' most recent tenure as a Slot Tech Supervisor was between May 2021 and October 2022.  Therefore, it is not appropriate to extend the scope of the class beyond his tenure.  One court in the Eastern District of Arkansas has correctly limited the scope of a collective action to the individuals who worked at the same time as the lead plaintiff.  *See e.g. Mitchell, et al. v. Brown's Moving and Storage, Inc.,* Case No. 4:19-cv-00783-LPR, Doc. 25 (E.D. Ark. January 11, 2021).

- *Were opt-in plaintiffs subjected to the same policies and practices and the extent to which the acts constituting the alleged violations are similar.*

While Phillips shares a job title with four other individuals who worked during his most recent tenure, they are not necessarily subject to the same policies and practices.  Specifically, Phillips' declaration states that, "*I* did not have the authority to hire or fire any other employee, and "*I* did not manage the enterprise or a customarily recognized department."  (Doc. 10-6, Paragraphs 9-10, emphasis added).  Phillips is speaking for himself, unlike other paragraphs where he purports to have knowledge of the duties of his fellow employees.  While Phillips is incorrect in these assertions, per disciplinary documents he drafted that led to a discharge (Gilson Aff.), these

allegations are unique and limited to him on their face.  They are not allegations or evidence of a common policy or practice.

The undisputed facts, if the parties have time for discovery, will show that Phillips and the other Slot Tech Supervisors were exempt executives who were paid on a salary basis, managed a particular shift, directed the work of two or more employees on their shift, and gave input into personnel decisions that was given particular weight by the ultimate decision makers.  (Gilson Aff.)  This is not a case that should be stirred up with notices going out to clearly exempt supervisors (executives), who ultimately are going to be deemed ineligible to participate in a collective action as the underlying claim is without merit.  This is precisely the type of case were preliminary discovery would lay bare the undisputed facts that Phillips and his colleagues were properly classified as exempt.

**B.      Plaintiff's Proposed Means and Methods of Noticing Putative Plaintiffs are Overly Broad, Unduly Coercive, and Intrusive.**

If this Court grants Plaintiff's Motion for Conditional Certification, it should not permit Phillips to pursue the proposed methods and means of notice because they are overly broad, unduly coercive, and intrusive.  Phillips proposes notifying putative plaintiffs through several methods: 1) an initial collective action notice sent by U.S. mail and email; and 2) a follow-up postcard to be sent through U.S. mail or e-mail.  Oaklawn objects to the form and substance of Phillips's proposed notice methods.

-     *Form of Notices*

This Court has previously ordered in at least two recent cases that revisions were necessary to the Sanford Law Firm's (SLF) Notice to putative opt-in plaintiffs.  *Adkinson v. Tiger Eye Pizza, LLC*, 2019 U.S. Dist. LEXIS 178897 (W.D. Ark. 2019); *Turner v. Concentrix Services*, 2020 U.S.

FEC/10104.0806/10138410.1-7/14/23

Dist. LEXIS 16785 (W.D. Ark. 2020). SLF has ignored these orders and forged ahead with substantially the same proposed Notice that were rejected in *Adkinson* and *Turner*.

In *Adkinson*, the Court ruled that express judicial disclaimer language was appropriate and necessary. Specifically, the Court ordered the sentence, "The Court does not encourage or discourage participation in this case" be added to the Notice. SLF has not included that disclaimer language in its proposed Notice. Such notice should be included. The Court also ordered this disclaimer to be included in the e-mail notice. SLF has not included that disclaimer in its proposed e-mail Notice. Such notice should be included.

Also in *Adkinson*, the Court ordered the following sentence be included at the beginning of the retaliation section: "This case does not involve claims or allegations that Defendants have retaliated against former or current employees." SLF has not included that disclaimer language its proposed Notice. Such language should be included.

In *Turner*, the Court held that the Effect of Severance provision the plaintiff's proposed notice was unnecessary and should be removed. SLF has included that same proposed section again in its notice with no argument why the Court's decision in *Turner* should be reconsidered. The language is still unnecessary, and it should be removed.

Also in *Turner*, the Court held that disclaimer that the Court neither encourages nor discourages participation in the case should go on the reminder notice. SLF has omitted that language without explanation. Such language is appropriate and should be included. The Court likewise ordered the reminder post card to be styled: "Reminder of Right to Join Lawsuit." SLF has ignored that holding and proposed the same reminder notice with the title, "Second Notice of Right to Join Lawsuit." The Court's proposed title in *Turner* was appropriate, and it should be the title of a reminder notice in this case.

FEC/10104.0806/10138410.1-7/14/23

- *Method of distribution*

Phillips' request with respect to a follow up communication is vague. Phillips requests the Court to permit a "follow-up reminder notice via email or U.S. Mail." (Doc. 10, Paragraph 6) Oaklawn requests that the Phillips be limited to one method or the other. Allowing both at SLF's discretion is unduly repetitive. The proposed follow up e-mail also omits the required judicial claimer language.

- *Contact information*

Phillips' motion, brief and exhibits are silent as to any requested communication with putative opt-ins via telephone/cell phone. Yet the request for contact information contains a request for any and all phone numbers of which Defendant is aware for each putative class member. Phillips has no valid reason to request or have the putative class members' phone numbers unless he intends to use those numbers to contact the individuals outside the scope of the Court's approval and management of the notice process. The scope and content of the communication with proposed opt-ins is strictly overseen and approved by the Court. Unmonitored, unlimited, and unrestricted telephone communication with these individuals would undermine any guiderails the Court would impose on communication with the proposed opt-ins. This request is improper and should be denied.

This Court gave the defendants fourteen days to produce information in both *Adkinson* and *Turner*. Phillips asks for the information in seven days without any explanation why the Court's previous timeline of fourteen days was unreasonable. In the event Oaklawn is ordered to produce information, it requests at least fourteen days to gather and produce it.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiff's Motion for Conditional Certification.

FEC/10104.0806/10138410.1-7/14/23

Respectfully submitted,

Wayne Young (ABA# 2003128)
Friday, Eldredge & Clark, LLP
400 West Capitol Avenue, Suite 2000
Little Rock, AR 72201-3493
501-370-1402
501-244-5305- Fax
wyoung@fridayfirm.com

*Attorneys for Defendant*
*Oaklawn Jockey Club, Inc.*

FEC/10104.0806/10138410.1-7/14/23